All right, Ms. DeLauro, whenever you're ready. Good morning, Your Honors. May it please the Court. Jackie DeLauro for Ernest Williams. This Court has been clear that when a sentencing court is selecting the most applicable guideline, it looks at two things, looks at the language of the indictment, and it looks at the guidelines. In this case, the statutory index refers a sentencing judge to four possible guidelines for violating 2113A, but only one of them is the most applicable here, and that's the burglary guideline, because the language of Mr. Williams' indictment said that he was charged with entering a bank, attempting to enter a bank, with the intent to commit a felony therein. That's burglary. And yet the sentencing judge in this case applied the robbery guideline, and he did so only because there was a specific offense characteristic within the robbery guideline that applied to a financial institution or a bank. But this Court— Just in common sense, doesn't burglary most often mean breaking into a building at night when there's not likely to encounter somebody? In this case, he's breaking into that bank during business hours, and he's going to encounter somebody. He's not going in—common sense would seem to tell you that he's not going in that bank to just go to an unattended drawer and take money, but he's going in there to rob somebody. And the only way he can effect what he wants to do is to confront a person and end up robbing a person. That's not—that doesn't sound like burglary to me. But there's—that is burglary by Taylor's definition out of the Supreme Court, that it's simply attempt—unlawful attempt to enter a building with the intent to commit a felony there. I know that, but in this case, it's more than that. It is—you have the added fact that he's just not entering—your argument would make perfect sense if it was a warehouse or something where nobody was. This is—he's entering during working hours, and the only way he could get to the object of his desire is to go through a person. That sounds like robbery. But none of that, respectfully, Your Honor, is in the language of the indictment. And Lambert, which is a published decision of this Court, says that— So your answer is, I'm correct, and common sense tells you that, but the law says you can't pay attention to common sense. The law says that you focus on the language of the indictment, and to the extent the sentencing judge, like you do, Judge Shedd, believes that this is an important factor, that's something that can come into consideration when he's departing or veering upward. There's nothing to say that the judge cannot consider that in sentencing. It's simply that it cannot be a consideration at the time of selection of the most applicable guideline. And I think this case presents a straightforward application of this Court's fullware decision, which is that the critical analysis is selecting what is the crime that's charged in the indictment. In that case, it was, is it fraud or is it perjury? And Judge Traxler, in his opinion, said, what does it matter if there's a specific offense characteristic referencing you to a bankruptcy proceeding? That's not helping you to decide which crime is charged in the indictment. That's simply... Did it strike you as odd in a system of individualized sentencing, we don't actually ever consider what the individual did in deciding under the categorical approach as to what he really did? I don't think that's quite right, Your Honor. I think there is a compromise in the sentencing guidelines, and the guidelines are straightforward about this, between charged offenses and real offenses. But there are points in the sentencing process when the judge... No, but it's not individualized sentencing. You don't disagree with any of the facts I set out as to what he was doing. If in fact he was going in that bank, he wasn't going in to get the purpose of his going into that bank, the illegal purpose, other than going through a person. He didn't plan to stealthily sneak up and reach his hand into the till and take money. He was going in to confront somebody to tell them to give him money, right? That may well be, and that's something that the sentencing judge can consider at a later part in the process. But I'm saying, but as far as how we look at this as to what his actual crime was, maybe we can't consider it. But that's not... We don't look at... The categorical approach is absolutely contrary to individualized sentencing. Because you can't look at any of those facts, you just have to look at elements or as charged in the indictment, right? At this stage in the process, it's a selection of the guidelines. But I said as to the crime he's committing, as to the crime he's committing, you don't get to decide. Because why? If you can look at it later, if he didn't have the categorical approach, why couldn't you consider all that in deciding what the appropriate sentencing guideline was first? Because the focus is on the charge and the way the government selects to charge the conduct. That's what I mean. Yeah, that's what I mean. So if the government believed that it could prove what Your Honor is saying about the facts of the crime, and it wanted to charge this as a robbery, it had every ability to do so. Well, isn't it also true that if they were going to charge him with a robbery, the indictment would have to include an element of force and violence or intimidation? That's exactly right. And if the government thought it could prove it up, it could have charged this case that way. And that would have led to selection of a different guideline, would have led to selection of the robbery guideline. But because it's charged as a burglary, and that's at 7A in our joint appendix, they're stuck with the burglary guideline. And Your Honor, the government points to two cases, two unpublished decisions out of this court, Johnson and Sutton. But I believe they're in direct conflict with Boulware because they elevate the specific offense characteristic over the selection of the guideline. And I think that's inappropriate under this court's precedence. The court has no further questions. I'll reserve my time for rebuttal. Thank you. Mr. Fender? May it please this honorable court, my name is Donald Fender. I'm here today on behalf of the United States government and very excited to be here before this court for the first time. And hopefully I will do a satisfactory enough job to where it will not be my last time. We hope you'll be excited after you read our opinion too. I would like to start with the fact that the type of building is an essential characteristic under both the burglary and the robbery guidelines. Under the burglary guideline, we're looking at whether it's a residence, which would give you a base offense level of 17, a non-residence, give you a base offense level of 12. Under the robbery guideline, there's a specific offense characteristic if you're targeting a financial institution. The fact that the type of building is listed as an alternate base offense level under burglary and has a specific offense characteristic under robbery is evidence that the commission intended those things to be real offense issues. Now the defendant clearly doesn't mind you looking at the type of building under burglary because he benefits under that guideline because he would get the non-residence base offense level. And quite frankly, I don't blame him, but the thing is what he wants you to do under burglary is the precise thing he's actually not to do under the robbery guideline, which is to give significant consideration to the type of building targeted. Now a bank is not a residence, but a bank is not merely a non-residence. It is a specific type of building. It's a financial institution. Now because both guidelines weigh heavily the type of building involved, all the government's asking this court to do is apply the guideline that specifies a financial institution because it's more appropriate here. When you say they weigh heavily the type of building, you're referring to the fact that one references a specific offense characteristic of a bank, but in BULWARE didn't our court say that's not a relevant consideration? I'm glad you bring that up. In BULWARE, I think it differs from this case because in BULWARE I think the specific offense characteristic at issue was the fact that it was a bank rupsy proceeding. I would point out that a bank rupsy proceeding was not an essential element in the actual statute that was at question there, and that differs from here. The type of building is an element within the statute. Within the statute, it has to be an FDIC-insured bank, and I don't think that is specifically listed in BULWARE. I actually had to go back and read the statute that was at question there, but the fact that it was a bank rupsy proceeding was not an essential element within that statute, and I think that differs significantly from what we have here. Really the meat and potatoes of the statute is the fact that you're looking at an FDIC-insured bank. And so that would be my response to that question. Very plain terms, and I know this Court doesn't need me to put it in plain terms, but in very plain terms the government is just asking that you call the that you call this what it is. The judgment says robbery. The district court called it attempted robbery at sentencing. The PSR calls it robbery. The defendant admitted to entering the bank with the intent to demand money, and the indictment says that he entered an FDIC-insured bank with the intent to commit a felony therein and a larceny. A larceny is a taking away of property. That's what it is by its generic definition. And so under that reasoning, the government would submit, again, that the robbery is the more appropriate guideline in this case. Now we recognize that the district court relied upon a couple of unpublished cases from this court, but I would point out the district court didn't rely on those things blindly. The district court looked at those cases, looked at what the test was, and then the district court applied the test. The district court said, when I look at the guidelines and when I look at what's charged here, it's clear to me that when it's talking about a bank, we apply the robbery guideline. That's the proper test. If you remand it, they would apply that same test. Let me ask you. I hate to interrupt. Is there such a thing as bank burglary? I saw that in the defendant's brief. I have found cases. There is a case, United States v. Pope, that I believe is from the Second Circuit. It's not cited in either brief. In that case, the defendant was charged with a bank burglary and was sentenced under the bank burglary guideline. That's the only case where I've seen that actually applied. Again, none of the documents that I've seen within the record here with reference to this defendant use the language bank burglary. As far as I know, it only came up in… Well, under Section 2113A, the text says bank robbery. That can be violated in two ways. Bank robbery, which involves taking or attempting to take from a bank by force, intimidation, or extortion. Bank burglary, which simply involves entry or attempted entry into a bank with the intent to commit a crime therein. So there is a distinction in the text. Well, I think that's fair. In fairness, I didn't quite read the statute that way, but I think that's fair. But I think even if you go to the cases, I would point to specifically United States v. Johnson. If we look at the indictment in that case, the indictment in that case charges the defendant with knowingly attempting to obtain by extortion money, property, or anything belonging to or in the care, custody, control, management, or possession of a bank. The court still charged robbery. Or excuse me, still used a robbery guideline. If we go to United States v. Sutton, which is the case that probation used in support of sentencing defendant here. And that one is even more on point because we're actually looking at the burglary guideline and the robbery guideline. And the indictment in that case said that the defendant was charged with breaking into and stealing United States currency from an automatic teller machine containing money in the care, custody, control of a bank. So those guidelines, those indictments, excuse me, don't clearly describe a robbery either. The court still in those cases applied the robbery guideline because it looked at what the objective of those, in Johnson, the objective of the extortion, and in Sutton, the objective of the burglary was to commit the robbery. Right. But the Johnson case included both elements of robbery and extortion, didn't it? I'm assuming by that you mean because it says that you're attempting to obtain by extortion the money and property? Right. Right. Well, under the specific indictment here, and I recognize what the court is saying. And the court is looking at the fact that this indictment, the one that's at issue here does not use the word robbery, it does not use the word taking by force. What I would focus on is that it does say that he entered the bank with the intent to commit a larceny. So he entered this bank with the intent of taking away the bank's property. I would note that at common law, larceny would be a lesser included offense of robbery. So I think you already have a natural fit there in terms of what his intent was in entering into that bank. Okay. What would you charge somebody with if they broke into a bank at night and stole office supplies? Wouldn't that be burglary? I think it would very clearly be burglary. Yeah. It seems to me that that, and I'm not saying how all this works out, but it seems to me you're pointing to something that I suggest that at least what he's charged with, he was And you say, you just opened the door to say at least you can connect it through what the words in the indictment say. Right. But you think there could be a distinction between burglary, which it struck me you could. You could break into a bank the same way you break into a house, although I know some definitions I've looked at, burglary requires a dwelling place. Isn't that correct? That's correct. And under its generic definition, and I'm trying to think back, I know under the generic definition it's an unlawful or unauthorized entry, and I can't recall necessarily whether it specifies a dwelling place. I know under many statutes I've seen it, it does under its generic definition specify a dwelling place. Clearly we don't have a dwelling place here. And again, the only reason we know he intended to rob the bank is because he told us. Now I understand we can't look at the facts here. We have to look at the indictment versus what the guidelines say. But he told us what his intent was, so factually his intent's not at question. The only thing that's at question here is under the second paragraph of 2113A, does that sufficiently enough describe a robbery so as to apply the robbery guideline? And I, in my opinion, I think it does. And to the degree that it doesn't, I don't think it does a much better job of describing outright a burglary. And so again, the test here is to look at which is the more appropriate fit. And when in looking at the more appropriate fit, I do think the court is justified in looking at what is your target here? That's consistent with the commission's intent of including a specific offense characteristic for targeting a financial institution. I would note that if you charge him, if you were to apply the burglary guideline, that would directly butt heads with the commission's intent because he would receive a benefit from having targeted a bank as opposed to having targeted someone's house. And so for all those reasons, the government submits that the district court got this right, that they applied the right guideline, and we would ask that this court do the same. But may the guidelines want to reward him for leaving a loan to a private citizen and going after the big bad corporation, how about that? You don't think that's part of it? Well, when I mention the guidelines intent, that actually comes from a case as well, and it's one that's not directly cited in the brief. It's United States v. Alexander, and it's not factually on point here because that case is looking at the constitutionality of 2B3.1. Let me say this. I have no issue. This is your first argument in front of us. Yes, sir. I hope to see you again. I have to go back and see if all that put together really, how convincing it is. But I'm telling you, I'm convinced you're convinced by it. And I also appreciate the fact that it's clear to me that you have run out your argument, you've looked at other cases, and you've tried to fill in all the gaps and then explain it to the court. I personally think that's what a good advocate is supposed to do. Thank you, sir. I appreciate that. That doesn't mean you're going to win. I'm just saying that's a compliment for how you're presenting the case. It's much appreciated. Much appreciated, Your Honor. Thank you, Mr. Bender. I think we understand your argument. Okay. Thank you.  Ms. DeLauro, you have some time in reply. Thank you. Ms. DeLauro, you're pretty good at it, too, I must say. Oh, thank you. Your Honor, I think Judge Trexler really hit the point, which is that under the government's theory, there is no such thing as bank burglary. And that simply can't be right. Because if we're looking... There's no such thing as what? Bank burglary. You don't think there's such a thing? I think there is such a thing. I think it's exactly what was charged in this case. And I think if we're looking to the Commission's intent, we can look to the statutory index and the fact that when you reference 2113A, there are four guidelines that could be applicable. And of course, a bank is required by the terms of the statute. That's how you get federal jurisdiction, is by the FDIC insurance of this bank. So the fact that it is a bank is going to be true in any of the cases that fall under any of the four guidelines that the Commission provides for 2113A violations. Well, what would you do with just breaking in a bank at night to steal office supplies? What would that be? Where would that fall? I think that would be burglary with intent to commit larceny, as was this. I think it would be the same charged crime. And then the circumstances would be factors that the court would... So you think the indictment would have had to say, by force? That would have made the difference? How would you get to this guideline under your view? To the robbery guideline? Right. To the robbery guideline, I think there would have to be, as Judge Floyd pointed out, some charge of the use of force, or the threat of force. Yes. You think the indictment would have to say force? Yes, I do. If there are no further questions, Your Honor, we'll rest our briefs. Thank you. Thank you. All right. I'll ask the clerk to adjourn court, and then we'll come down and greet counsel. This Honorable Court stands adjourned. The name died. God save the United States and this Honorable Court. Thank you.
judges: William B. Traxler Jr., Dennis W. Shedd, Henry F. Floyd